UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| PARLEY DREW HARDMAN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 3:09-0960 |
| | ) | (Crim. Case No. 3:03-00229) |
| | ) | Judge Echols |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM

Pending before the Court is Petitioner Parley Drew Hardman's "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody" (Docket Entry No. 1). Petitioner has filed a Memorandum in support of his Motion (Docket Entry No. 6), the Government has filed a response in opposition to the Motion (Docket Entry No. 14), and Petitioner has filed a "Traverse to the Government's Response" (Docket Entry No. 23).

### I. FACTUAL BACKGROUND

Petitioner has been convicted in two separate murder-for-hire plots, both of which arose after the relationship between Petitioner and his ex-wife Cherylynn Collins ("Collins") ended. This case involves his conviction in relation to the second murder-for-hire scheme.

In the first case, United States v. Hardman, Case No. 3:01-00179, Petitioner was convicted of (1) solicitation to commit a federal crime of violence, that being the interstate stalking of Collins; (2) solicitation to commit Collins' murder; and (3) conspiracy to commit the interstate stalking of Collins. He was sentenced to a term of 180 months imprisonment.

1

While in jail on those convictions, Petitioner, together with his new girlfriend, Brenda L. Lampley ("Lampley"), devised a scheme to retaliate against Collins and also to get back at those Petitioner viewed as being responsible for his incarceration. The targets included former Mafia members Marvin A. Droznek ("Droznek") and Joseph Roselli ("Roselli"), who testified against Petitioner at the first trial, and Sunny A.M. Koshy ("Koshy"), the Assistant United States Attorney who prosecuted the case. After the scheme was uncovered, a grand jury returned a nine count Indictment against Petitioner and Lampley.[1]

Count 1 charged Petitioner and Lampley with solicitation to commit a federal crime of violence, that being to kill Koshy on account of Koshy's performance of his official duties. Count 2 alleged that the Petitioner and Lampley conspired to kill Koshy on account of the performance of his official duties. In Count 3, Petitioner and Lampley were alleged to have solicited a federal crime of violence against witness Droznek, and in Count 4 to have conspired to retaliate against Droznek. Count 5 alleged Petitioner solicited a crime of violence against Roselli in retaliation for previously testifying against Petitioner in the prior proceeding. Counts 6 and 7 related to the interstate stalking of Collins, with Count 6 alleging solicitation to commit interstate stalking and Count 7 alleging conspiracy to commit interstate stalking. In Count 8, Petitioner and Lampley were charged with soliciting a federal crime of violence, that being to retaliate against Collins for previously having testified against Petitioner. Finally, in Count 9, Petitioner and Lampley were charged with conspiring to retaliate against Collins for having been a federal witness against Petitioner.

Lampley pled guilty to Count 2 of the Indictment and was sentenced to a 78 month term of imprisonment. Petitioner exercised his right to trial and was represented by James W. Price ("Price").

---

[1] Lampley was charged in all but Count 5.

Price replaced previously appointed counsel Jennifer Lynn Thompson who was granted leave to withdraw after Petitioner expressed dissatisfaction with her representation.

After Price was appointed, he moved for a continuance of the November 16, 2004 trial date, and the trial was rescheduled for March 15, 2005 to allow Price time to prepare. On March 7, 2005, Price moved for another continuance in order to complete his preparation for trial and the trial was reset for September 13, 2005.

At trial, the evidence showed that while Petitioner was confined in the Davidson County Jail for his convictions in the first case, he was housed with Juan Canela ("Canela"), whom Petitioner believed to be associated with the Gambino crime family in New York City. Petitioner told Canela of his plan to "hand over" Droznek and Roselli to the Mafia and gave Canela pages from the transcript of his first trial wherein Droznek and Roselli testified about their past affiliation with the Mafia. Petitioner believed that the Mafia would want to kill Droznek and Roselli because they had testified in prior cases against the Mafia, and that, in return for "surfacing" them, the Mafia would pay Petitioner a finder's fee and/or also kill Koshy and Collins.

However, instead of contacting the Mafia, Canela reported the plot to his attorney, who, in turn, notified Koshy. Prison officials and federal agents subsequently arranged for an undercover agent to speak with Petitioner. The undercover agent, dressed as a clergyman, met with Petitioner at the jail and presented himself to Petitioner as a Mafia hit man. The conversations between the undercover agent and Petitioner were recorded and those recorded conversations indicated Petitioner's specific requests to have Koshy, Droznek, and Roselli murdered, and to have Collins' legs broken. Prison officials also recorded several conversations between Petitioner and Lampley concerning the plot.

3

After a five day jury trial, Petitioner was convicted on all nine counts. Petitioner was sentenced to concurrent terms of 242 months imprisonment on each of Counts 1-5; 30 months of imprisonment on Count 6; 60 months of imprisonment on both Counts 7 and 8; and 120 months of imprisonment on Count 9. Terms of supervised release were also imposed, including five years of supervised release on Counts 2 and 4; three years of supervised release on each of counts 1, 3, 5, 7, 8 and 9; and one year of supervised release on Count 6, with all terms of supervised release to be served concurrently. Petitioner's conviction and sentence were affirmed on appeal. United States v. Hardman, Slip. op. no. 06-5799 (6th Cir. March 25, 2008).

## II. STANDARD OF REVIEW

To prevail on a § 2255 motion, the Petitioner must establish either an error of constitutional magnitude that had a substantial and injurious effect or influence on his criminal proceeding, see Brecht v. Abrahamson, 507 U.S. 619, 637-38 (1993), or the record must reflect a fundamental defect in the proceedings that inherently resulted in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure. Reed v. Farley, 512 U.S. 339, 348 (1994); United States v. Todaro, 982 F.2d 1025, 1028 (6th Cir. 1993). Claims of error must be raised in the trial court and on direct appeal or such claims are procedurally defaulted. See Phillip v. United States, 229 F.3d 550, 552 (6th Cir. 2000).

Under Rule 8 of the Rules Governing Section 2255 Proceedings, the Court "must review the answer, any transcripts and records of prior proceedings, and any materials submitted under Rule 7 to determine whether an evidentiary hearing is warranted." Petitioner is not entitled to an evidentiary hearing if the § 2255 motion and the record of the case conclusively show that he is not entitled to relief. See Green v. United States, 65 F.3d 546, 548 (6th Cir. 1995). Finally, when the trial judge

also hears the collateral proceedings, the judge may rely on his recollections of the prior proceedings in ruling on the collateral attack. Blanton v. United States, 94 F.3d 227, 235 (6th Cir. 1996).

### III. ANALYSIS

In his Section 2255 Motion, Petitioner asserts that his trial counsel, Price, was ineffective. Petitioner also asserts that the Government engaged in prosecutorial misconduct.

**A. Ineffective Assistance of Counsel**

Petitioner raises several somewhat related claims of alleged ineffective assistance of counsel. He claims Price was unprepared and, because of the lack of preparation, failed to present a defense. Petitioner also claims Price failed to "discuss" that Petitioner "would be unable to take the stand[.]" (Docket Entry No. 6 at 3). Finally, Petitioner claims Price failed to prevent the jury at his second trial from hearing about the first trial.

To establish ineffective assistance of counsel, Petitioner must show that his counsel's performance was deficient and that the deficiency prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687 (1984); Evitts v. Lucey, 469 U.S. 387, 396 (1985). Petitioner must show that counsel made errors so serious that he or she was not functioning as the counsel guaranteed by the Sixth Amendment, and that there is a reasonable probability that the lawyer's errors prejudiced the outcome of the proceedings against him. Strickland, 466 U.S. at 687; Arredondo v. United States, 178 F.3d 778, 782 (6th Cir. 1999).

A reasonable probability is one sufficient to undermine confidence in the outcome; it is a less demanding standard than "more likely than not." Strickland, 466 U.S. at 697. A court need not address both parts of the Strickland test if the Petitioner makes an insufficient showing on one. Id.

Here, Petitioner fails to show either deficiency or prejudice with respect to any of the alleged claims of error by trial counsel.

5

### 1. *Lack of Preparation and Failure to Present a Defense*

Petitioner claims Price was unprepared because "he specifically admitted on the record that he was not familiar with the first case, and he had not read the transcripts." (Docket Entry No. 6 at 5). Petitioner submits that alleged failure rendered Price unable "to cross-examine witnesses or to contest any alleged events that occurred in the first case." (Id.). A review of the trial transcript shows that Petitioner's assertions are meritless.

On June 29, 2004, the Court entered an Order ("the Order") granting the Government's "Motion Regarding the Admissibility of Evidence Concerning Prior Conviction and Plot" and held that "evidence of [Petitioner's] prior conviction in Criminal Case No. 3:02-00179 is admissible" in the second trial because the two cases were "inextricably intertwined," and the evidence of the prior conviction was much more probative than prejudicial under Fed. R. Evid. 403. The Court further held that evidence from the prior trial could demonstrate the identity of the victims, as well as Petitioner's motive, intent and the absence of mistake or accident, and was therefore admissible under Fed. R. Evid. 404(b). (Case No. 3:02-00179, Docket Entry No. 71 at 3 & 5). In so holding, the Court wrote:

> Hardman's prior conviction is the prelude to the second plot. Without facts from the first case, there is no suggested connection between Hardman and the victims in the second case, except his former wife. Without the involvement of Koshy, Droznek, and Roselli in his first conviction, Hardman would have no reason to seek the murders of these men. The first plot is directly probative of the second in that Hardman used the same modus operandi, i.e. he sought to hire a mafia hit man to kill individuals whom he disliked. Furthermore, the prior conviction most certainly forms an integral part of much of the testimony of the Government's witnesses.

Id. at 3.

On the morning of the rescheduled trial, and while the prospective jury panel was in the jury assembly room, counsel for both parties inquired into the scope of the Order and what evidence from

6

the first trial would be allowed in the second trial. During the colloquy with the Court, Price stated that while he had read the Indictment from the first trial, the Government's motion seeking to introduce evidence from the first trial, and the Order, he was not prepared to retry the first case because he understood the Order merely to allow the Government to present *proof* of Petitioner's prior conviction, *i.e.* by reading the Indictment from the prior case to the jury and/or introducing the Judgment of Conviction from the first case. Price stated that if the Court were to allow the Government to put Collins, Roselli and Droznek on the stand , he should be allowed time to read the transcripts from the first trial because he did not expect to have to cross-examine those witnesses.

After further discussions, it was determined that the Government would be allowed to go beyond merely reading the Indictment from the first trial to the jury, and that the Government would be allowed to call Koshy and Collins to testify about the basic background of the first trial so that the Government could show motive and the common scheme or plan as between the two plots. The Court informed the jury panel around noon on September 13, 2005 that jury selection would start the following morning at 9:00 a.m.

After the jury panel was discharged for the day, the Court stood in recess for several hours, during which time Price reviewed the transcripts from the first trial. Back on the record that afternoon, Price informed the Court that "I've finished all the transcripts. I have one more witness to go through." (Tr. Trans. 60). After discussion about the jury selection process, the Court recessed until the following morning, giving Price time to finish reviewing the transcripts, if necessary.

With its Response to Petitioner's Section 2255 Motion, the Government has filed an Affidavit from Price. In that Affidavit, Price avers that he spent more than 77 hours in pretrial preparation. He also states that by the end of the first day of trial (and before the jury was selected), he had read the transcript from the first trial and that,

7

> A reading of the transcript did not provide any useful information beyond which I had already acquired from reading of the trial summaries and interviews with defendant, witnesses and their counsel. I was prepared to begin the trial the next morning and told the Court that I did not require a third continuance, and I stand by that assertion. I had a thorough understanding of the factual and legal matters at issue, and no additional time or investigation would have changed the case I put forward on Mr. Hardman's behalf.

(Docket Entry No. 14-1, Price Aff. ¶ 4).

Petitioner's present assertion that counsel was unprepared to try the case is unsupported and belied by the record. The conclusory assertions made by Petitioner are insufficient to warrant relief under Section 2255. See, Cross v. Stovall, 238 Fed. Appx. 32, 38 (6th Cir. 2007)("ineffective assistance of counsel claim is doomed by the fact [petitioner] makes nothing more than conclusory assertions").

Moreover, the trial transcript and this Court's own recollection establishes that Price was well-prepared for trial, and that he presented a plausible defense. He effectively cross-examined the Government's witnesses and spent a good deal of time attempting to undercut the testimony of Petitioner's cell mate Canela. During cross-examination, Price underscored Canela's criminal history and possible bias by having Canela admit that he went by several aliases, that he had been convicted in federal court of possessing with intent to distribute large quantities of ecstasy and cocaine, that he had yet to be sentenced on those charges and was hoping for a Section 5K1.1 reduction under the United States Sentencing Guidelines for his substantial assistance to the Government in its present case against Petitioner, and that he had been convicted of other crimes and was facing the possibility of 30-years imprisonment on his most recent conviction.

Canela also admitted during Price's cross-examination that he (Canela) lead Petitioner to believe that he had connections in organized crime who could enlist the aid of the Gambino crime family in carrying out the plot to kill witnesses from the first trial, and this was in keeping with the

8

defense theory that Petitioner was entrapped. (Tr. Trans. 284-304). To bolster this entrapment defense, Price called Engle Owens ("Owens") who was housed with Canela at the Grayson County Jail. Owens testified that in January 2004, Canela told him he and the undercover agent had "set-up" Petitioner and that because of his testimony Canela was hoping to have his sentence reduced from 30 years to 8 years. Owens also testified that in March 2004, he wrote a letter to Koshy, setting forth what he believed to be an "orchestration" by Canela. Owens further testified that he was not appearing at the trial voluntarily, but he been subpoenaed to testify.

Ultimately, the entrapment defense proved unsuccessful. However, "the fact that a particular defense was unsuccessful does not prove ineffective assistance of counsel." Ward v. Hall, 592 F.3d 1133, 1164 (11th Cir. 2010). Strickland teaches that "[j]udicial scrutiny of counsel's performance must be highly deferential," and must avoid the "second-guess[ing of] counsel's assistance . . ., [as] it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Strickland, 466 U.S. at 689. Therefore, "[t]o counteract the natural tendency to fault an unsuccessful defense, a court reviewing a claim of ineffective assistance must 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" Nix v. Whiteside, 475 U.S. 157, 165 (1986)(quoting Strickland, 466 U.S. at 689). This Court's review of counsel's performance in this case leads it to conclude that Price offered more than reasonable professional assistance and, accordingly, Petitioner's claim that counsel was unprepared and/or failed to present a defense fails.

### 2. *Petitioner's Failure to Take the Stand*

In the Memorandum filed in support of Petitioner's Section 2255 Motion, Petitioner argues that Price was ineffective because "[h]e failed to discuss the fact that Hardman would be unable to take the stand and what was about to take place." (Docket Entry No. 6 at 3). As the Government

9

observes, this argument can be read in either of two ways. It can be read as suggesting that Price was ineffective because he failed to give reasons, either during opening statement or in closing arguments as to why Petitioner would not, or did not testify, and Price failed to tell the jury about the effect of the Government's introduction of facts from the first trial. Alternatively, the argument can be read as suggesting that Price was ineffective because he failed to explain the possible benefit and/or detriment in Petitioner testifying on his own behalf. Under either scenario, Petitioner's argument fails.

In his Affidavit, Price states that he "made a tactical decision not to raise with the jury Mr. Hardman's decision not to testify, and instead decided to rely on this Court's standard jury instruction on that issue." (Docket Entry No. 14-1, Price Aff. ¶ 6).

As already indicated, review of counsel's performance is deferential because counsel is presumed to provide effective assistance. This is even more so in the context of counsel's arguments to the jury and, indeed, judicial review of counsel's arguments is "highly deferential." Yarbrough v. Gentry, 540 U.S. 1, 6 (2003). Moreover, under Strickland, "[a] strategic decision cannot be the basis of a claim of ineffective assistance unless counsel's decision is shown to be so ill-chosen that it permeates the entire trial with obvious unfairness." Hughes v. United States, 258 F.3d 453, 457 (6th Cir. 2001).

Here, counsel's decision to focus almost exclusively on Canela's alleged entrapment of Petitioner during opening and closing and to forego explaining why Petitioner would not or did not take the stand, cannot be viewed as "ill chosen." Counsel knew that the Court was going to explain in its instructions that Petitioner had a right not to testify and that no presumption of guilt could be raised from the fact that Petitioner did not testify. The Court gave the jury that charge and the jury is presumed to follow the Court's instructions, Richardson v. Marsh, 481 U.S. 200, 206-207

10

(1987)(collecting cases), including the instruction that a defendant has a Constitutional right not to testify and that no inference of guilt can be drawn from the fact that a defendant exercises that right, see, United States v. Piatz, 1999 WL 50849 at *9 (7th Cir. 1999).

Nor was counsel ineffective in failing to explain the Government's introduction of facts from the first trial to the jury because, again, these were matters addressed by the Court. During Koshy's testimony (Tr. Trans. at 112-113), and also after Collins testified (Tr. Trans. at 383-385), the Court explained to the jury that evidence from the first trial could not be considered as evidence that the Petitioner committed the crimes for which he was then on trial or to show Petitioner's character, but instead was introduced for the limited purpose to show motive, knowledge, identity of the victims, and the lack of accident or mistake. Moreover, the Court gave a lengthy Fed. R. Evid. 404(b) instruction during the final charge which read:

### **OTHER ACTS OF THE DEFENDANT**

> You have heard testimony that the defendant committed some acts other than the ones charged in the Indictment. Specifically, you have heard that Defendant Parley Drew Hardman was tried and convicted in 2003 for soliciting the murder of his ex-wife or soliciting another to commit serious bodily injury to his former wife, and for joining into a conspiracy with another to have his ex-wife murdered or seriously injured.
> You cannot consider this testimony as evidence that the defendant committed the offenses for which he is on trial now. Such evidence is not admissible to prove the character of the defendant in order to show that he acted in this case in conformity with the actions in the prior case. Instead, you can only consider this evidence for certain limited purposes such as the following: (1) to show motive, namely that the defendant wanted to avenge or retaliate against those who helped to convict him of the charges in the prior case and to prevent them from testifying against him in the future; (2) to show knowledge and identity of the victims in this case because of the roles they played in the prior case; (3) to show defendant's intent to commit the crimes charged in this case against those who were most responsible for putting him in jail; and (4) to show the absence of mistake in the alleged plot to have the victims in this case killed or injured and that the defendant was serious in approaching others to commit the acts charged. You may not consider this evidence for any other purpose than for the limited purposes stated above.

11

> However, the defendant in this case has raised the defense of entrapment, which I will instruct you about later on pages 71 and 72. Because the defendant has raised this defense, you may also consider the above "limited purpose" evidence in determining whether the defendant was already willing to commit any of the offenses charged in the present Indictment prior to the time he was first approached by government agents or other persons allegedly acting for the government.
>
> Remember, the defendant is on trial here only for those offenses alleged in the Indictment in this case, not for charges or actions taken in the prior case. Do not return a guilty verdict unless the government proves the offenses charged in the present Indictment beyond a reasonable doubt.

(Case No. 3:03-CR-00229 Docket Entry No. 212, Jury Charge at 16-17).

Counsel cannot be faulted for not explaining what was made abundantly clear to the jury. Again, the jury is presumed to have followed the Court's detailed and repeated instructions as to how the evidence from the trial could be used. See, Francis v. Franklin, 471 U.S. 307, 324 n. 9 (1985)(a court "presumes that jurors, conscious of the gravity of their task, attend closely [to] the particular language of the trial court's instruction in a criminal case and strive to understand, make sense of, and follow the instructions given them.").

Insofar as Petitioner claims that counsel was ineffective because he did not consult with Petitioner about Petitioner's right to take the stand, that argument, too, must be rejected. In his Affidavit, Price avers that he discussed with Petitioner the "advantages and disadvantages of his possible testimony," but that Petitioner chose not to testify. (Docket Entry No. 14-1, Price Aff. ¶ 6).

Regardless, the Sixth Circuit "entertains a strong presumption that counsel adhered to the requirements of professional conduct and left the final decision about whether to testify with the client." Hodge v. Haeberlin, 579 F.3d 627, 639 (6th Cir. 2009). "To overcome this presumption, [Petitioner] would need to present record evidence that he somehow alerted the trial court to his desire to testify." Id.

12

In this case, at no time during trial did Petitioner alert the Court that he wanted to testify or that he had a disagreement with counsel about whether he should take the stand. His failure to alert the Court about the desire to testify is fatal to his present claim. See, United States v. Webber, 208 F.3d 545, 551 (6th Cir. 2000)(a defendant must alert the trial court that he wants to take the stand, otherwise waiver is presumed); Hodge, 579 F.3d at 639 (to prevail on ineffective assistance of counsel claim, petitioner must show that he alerted trial court of desire to testify).

### 3. *Counsel's Failure to Keep Out Evidence From the First Trial*

Petitioner makes a general claim that counsel was ineffective in failing to keep out evidence from the first trial and this unfairly shifted the burden of proof to Petitioner. Any failure of counsel in this regard, however, was not due to a lack of effort by counsel or ineffectiveness.

As indicated, prior to jury selection, counsel raised the issue of the breadth of the Court's Order relating to the admission of evidence surrounding Petitioner's prior conviction. During an extended colloquy, Price urged the Court to prohibit the Government from introducing the facts underlying Petitioner's prior conviction; to prohibit the Government from calling Droznek, Roselli, or Collins; to limit Koshy's testimony to the fact that he was the prosecutor in the prior case; and to limit the evidence from the prior case to the Indictment and Judgment of Conviction from that case. While counsel was not totally successful, his efforts proved fruitful because the Government agreed to introduce the essential facts from the 2003 trial through Koshy's testimony and not call Droznek or Roselli. Further, and at Price's request, the Court required the Government to proffer the anticipated testimony of Koshy and Collins outside the presence of the jury.

Moreover, to establish any claim of ineffectiveness, Petitioner must show that he was prejudiced by counsel's performance, meaning "that, but for counsel's alleged errors, the results of the proceedings would have been different." Strickland, 466 U.S. at 694. Here, Petitioner cannot

13

make that claim since, on appeal, the Sixth Circuit upheld this Court's conclusions "that: 1) Hardman's convictions in 2003 were sufficient proof that prior bad acts surrounding his plot to harm Collins had occurred; 2) the 2003 convictions established the identity and relationship of the parties and were relevant evidence of Hardman's intent; 3) the evidence and results from the 2003 trial supplied a motive for Hardman's commission of the crimes in the present case and demonstrate that the alleged victims were not targeted by mistake or accident; and 4) the evidence allowed in the present case from Hardman's 2003 trial was highly probative and not outweighed by any prejudicial effect it could have had on the jury in the present case." Hardman, Slip op. no. 06-5799 at 4.

Given the foregoing, Petitioner's ineffective assistance of counsel claims are rejected.

**B. Prosecutorial Misconduct**

Petitioner claims that the prosecutors in the second trial engaged in prosecutorial misconduct by introducing evidence from the first trial which was specifically designed to "inflame the jury" and "shock the jury's conscience" such that Petitioner was deprived of his Fifth Amendment right to due process. (Docket Entry No. 6 at 8). Petitioner also claims "the government's argument so infected the proceedings with unfairness as to make the jury's verdict a violation of due process." (Id. at 9-10).

To prevail on a claim of prosecutorial misconduct, Petitioner must first show that the prosecutor engaged in conduct which was improper. Johnson v. Mitchell, 585 F.3d 923, 936 (6th Cir. 2009). If the conduct was improper, the inquiry then becomes whether the actions were so flagrant that they "'infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Id. (citation omitted). "[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." Slagle v. Bagley, 457 F.3d 501, 516 (6th Cir. 2006).

14

The prosecution's use of evidence from the first trial was not improper. Prior to introducing any such evidence, the Government sought leave of the Court by filing its "Motion Regarding the Admissibility of Evidence Concerning Prior Conviction and Plot," which the Court granted. Further, after discussion with counsel, the Court set forth what evidence from the first trial would be admissible in the second trial and the Government followed the Court's rulings. Moreover, the Sixth Circuit determined that this Court's rulings on the admissibility of evidence from the first trial were not improper because those facts were "'inextricably intertwined with the charged offense . . . the telling of which was necessary to complete the story of the charged offense.'" Hardman, Slip op. no. 06-5799 at 3-4 (citation omitted). It simply is not improper for prosecutors to request permission from the Court to do something and then follow the Court's rulings.

Effectively, Petitioner is seeking to relitigate the Court's ruling on the admissibility of the evidence from the first trial at the second trial. However, it is "well settled that a § 2255 motion may not be employed to relitigate an issue that was raised and considered on direct appeal absent highly exceptional circumstances, such as an intervening change in the law." Jones v. United States, 178 F.3d 790, 796 (6th Cir. 1999). There are no exceptional circumstances in this case.

Petitioner also argues that the Government acted improperly by making improper remarks. To prevail on such a claim, Petitioner must show that the remarks were improper and, if so, the Court then determines whether such remarks were flagrant by considering whether they tended to mislead the jury and prejudice the defendant; whether the statements were deliberate; whether the statements were isolated or pervasive; and whether the evidence against the defendant is otherwise strong. United States v. Beasley, 583 F.3d 384, 392 (6th Cir. 2009).

In this case, Petitioner does not point to any specific remarks by the prosecutor which he claims were improper and this Court's review of the transcript reveals no statements by the

15

prosecutor which fall into that category. Without some identification of the allegedly improper statement, the Court simply cannot determine whether the statement was flagrant so as to render the trial constitutionally infirm.

## IV. CONCLUSION

For the foregoing reasons, Petitioner's "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by Person in Federal Custody" (Docket Entry No. 1) will be denied and this case will be dismissed with prejudice. No certificate of appealability will issue because Petitioner cannot demonstrate that reasonable jurists would find debatable or wrong this Court's conclusion that counsel was not ineffective, that any alleged ineffectiveness prejudiced the Petitioner, or that the prosecutors engaged in prosecutorial misconduct. See Slack v. McDaniel, 529 U.S. 473, 483-84 (2000).

An appropriate Order will be entered.

_____
ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE